IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ACTION 49 JUNCTION I, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | )   1:23-cv-01072-STA-jay |
| AIG TN HOLDING, LLC, | ) |
| | ) |
|     Defendant. | ) |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REFERENCE AS TO DAMAGES

On May 8, 2024, Plaintiff filed a motion for summary judgment. (ECF No. 26.) Subsequently, the parties asked the Court to stay the matter during settlement negotiations. The Court granted the motion to stay on June 5, 2024. (ECF No. 32.) On December 9, 2024, Plaintiff filed a status report indicating that the matter had not been resolved. Accordingly, on December 10, the Court lifted the stay and gave Defendant twenty-eight days in which to file its response to Plaintiff's motion for summary judgment. (ECF No. 42.) The requisite time has passed, and Defendant has not responded to the motion. Accordingly, for the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED**, and judgment will be entered in favor of Plaintiff.

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules of this Court, Plaintiff has prepared a statement of material undisputed facts (ECF No. 27) "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Defendant, as the non-moving party, was required to respond to Plaintiff's statement of facts "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

Because Defendant has not responded to Plaintiff's motion and has not submitted its own statement of material undisputed facts, Plaintiff's statement will be deemed undisputed. Thus, the Court finds that there is no genuine dispute as to the following material facts.

1. On January 21, 2005, Defendant AIG entered into a Lease Agreement with Plaintiff Action's predecessor-in-interest to lease property located in the Dyersburg Mall Shopping Center.

2. On June 11, 2020, an Action employee sent an e-mail to AIG stating, "Wanted to reach out and see if we can come to an agreement on how to get your rent current in Dyersburg."

3. AIG sent Action's employee an e-mail stating that it was experiencing a 48.63% sales decrease from the prior year and requested that Action significantly decrease AIG's monthly rent amount.

4. In response, Action offered to waive rent and charges due for May, June, and July 2020, among other concessions.

5. On August 8, 2020, AIG entered into the First Amendment to Lease Agreement with Action.

6. Under the terms of the lease agreements, AIG owed Action periodic rental payments.

7. The Lease provided that "Tenant shall pay all Rental when due and payable without any setoff, deduction . . . ."

8. On August 25, 2020, AIG sent an e-mail to Action's employee and again requested that Action significantly decrease AIG's monthly rent amount.

9. AIG failed to make its rental payments from August through November 2020.

10. AIG's failure to make rental payments from August through November 2020 was an event of default under the operative lease agreement.

11. AIG did not make rental payments from December 2020 through July 2021.

12. On November 4, 2020, Action sent AIG the written notice of default that the Lease Agreement required.

13. On November 11, 2020, AIG sent Action's employees an e-mail stating that AIG "will not be able to pay full rent until things get turned around, possibly until the end of Q1 or maybe even Q2-2020 [sic]. Sales are down over $440k YTD at this location."

14. On or around April 13, 2021, AIG "first became aware of leaks in the roof" that it alleges are the basis of its breach of contract claim.

15. On June 8, 2022, AIG sent an email to Action's employees stating that "[i]t has come to my attention that there are major issues with the Roof and Parking lot amongst other things at our Applebee's site" and requested that Action repair these items.

16. On July 7, 2022, an AIG employee sent an e-mail to an Action employee stating that Action's mall manager "Brian fixed most of the potholes himself," "the roof leaks still have not been fixed," and stated that "The scrubs [sic] are well above the window ledge and hanging over to cover most of the sidewalks with a significant amount of weeds in the landscaping and most of the mulch has washed away."

17. AIG failed to make its rental payments from July through November 2022.

18. On September 6, 2022, Action Properties, LLC sent AIG's attorney a letter stating that it fixed the potholes, it repaired the roof, and it was addressing the shrubbery conditions.

19. On September 23, 2022, Action Properties, LLC sent AIG's attorney a letter stating that it entered into an agreement to install a silicone roof system above Applebee's space, with work set to begin on October 10, 2022, and enclosed a copy of the agreement. (AIG TN Holding, LLC 281.)

20. In early October 2022, DAR roofing installed a silicone roof system above Applebee's space.

21. On October 17, 2022, Action Properties, LLC sent AIG's counsel notice that "Roof repairs over Applebee's at the Dyersburg Mall have been completed" and requested that "Should you have questions or need additional information, please do not hesitate to contact us."

22. On November 30, 2022, Action sent AIG notice that "Landlord has completed the maintenance issues submitted by Tenant's legal counsel."

23. The November 30, 2022 letter also gave another written notice of default.

24. After Action's November 30, 2022 notice, AIG did not give Action of any notice of any issue with the roof, parking lot, or shrubbery.

25. AIG made its last rent payment on October 4, 2023, which paid August 2023 and September 2023's rent.

26. AIG owes rent for August 2020, September 2020, October 2020, November 2020, December 2020, January 2021, February 2021, March 2021, April 2021, May 2021, June 2021, July 2021, July 2022, August 2022, September 2022, October 2022, November, 2022, October 2023, November 2023, December 2023, January 2024, February 2024, March 2024, and April 2024.

27. As of May 2, 2024, AIG owes $221,222.22 in unpaid rent, subject to interest and late fees.

28. Under the Lease Agreement, unpaid rent is subject to interest at the "Default Rate" of 12% per annum.

29. Under the Lease Agreement, AIG owes a late charge of 10% of its rental payment.

30. AIG never provided written notice that complied with the operative Lease.

31. On April 26, 2024, Action sent a notice of termination that terminated the Lease Agreement effective May 10, 2024.

Turning to the merits of Plaintiff's motion, in light of the undisputed facts set forth above and for the reasons set forth in Plaintiff's motion, the Court finds that AIG breached the Lease Agreement by failing and/or refusing to pay rent; AIG cannot prevail on its breach of contract counterclaim because it committed the first material breach; AIG has no right to quiet enjoyment if it is in breach; and AIG never provided written notice under the Lease Agreement.

Accordingly, Plaintiff's motion for summary judgment is **GRANTED**. Judgment shall be entered in favor of Plaintiff upon a determination of its damages. Judgment shall be entered against AIG TN Holding, LLC on all claims. AIG is **ORDERED** to vacate the subject property consistent with the lease termination.

This matter is hereby **REFERRED** to the Magistrate Judge for a determination of any damages and/or past due rent owed to Plaintiff by AIG and for a determination as to Plaintiff's attorney fees. Any objections to the Magistrate Judge's order shall be made within fourteen (14) days after service of the order, setting forth particularly those portions of the order objected to and the reasons for the objections. Failure to timely assign as error a defect in the Magistrate Judge's order will constitute a waiver of that objection. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. Thomas Anderson
United States District Judge

Date: January 9, 2025